UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                  Chapter 7
Michael G. Mack,                                       Case No. 14-34586-svk
        Debtor.

Patrick S. Layng, U.S. Trustee,
        Plaintiff,
v.                                                     Adversary No. 16-02304

Michael G. Mack,
        Defendant.

**MEMORANDUM DECISION ON
MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT**

      The U.S. Trustee seeks revocation of the Debtor's discharge under the "newly discovered fraud" ground of 11 U.S.C. § 727(d)(1). That section provides that the Court shall revoke a discharge if (1) it was obtained through the fraud of the debtor, and (2) the requesting party did not know of the fraud until after the debtor received the discharge. *Id.* The Debtor has moved for summary judgment on the first element, and the U.S. Trustee has asked for partial summary judgment on the second requirement.

      Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56; *Omega Healthcare Inv'rs, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). The Court views all facts and draws all inferences in the light most favorable to the non-moving party. *Omega Healthcare*, 475 F.3d at 857. According to the Debtor, the evidence shows he did not obtain his discharge through fraud, and he challenges the U.S. Trustee to show there is an issue for trial. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 324-25 (1986). On the U.S. Trustee's cross-motion, since the U.S. Trustee has the burden of proof at trial, he must "demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### The Debtor's Motion for Summary Judgment

Revocation of a discharge is an extraordinary remedy, and discharge revocation provisions are construed liberally in the debtor's favor. *Miller v. Kasden (In re Kasden)*, 209 B.R. 239 (B.A.P. 8th Cir. 1997); *see also In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (§ 727 exceptions to discharge are construed strictly against creditors). To succeed in proving the Debtor obtained his discharge by fraud, the U.S. Trustee must show that the Debtor acted with an intent to deceive. *Grochocinski v. Eckert (In re Eckert)*, 375 B.R. 474, 479 (Bankr. N.D. Ill. 2007). The particular discharge provision that the U.S. Trustee cites in this case is § 727(a)(4)(A), which denies a discharge to any debtor who knowingly and fraudulently makes a false oath in or in connection with the bankruptcy case. A party seeking denial of a debtor's discharge under this subsection must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011).

Initially, the Debtor asserts that the U.S. Trustee's amended complaint did not allege that he acted with intent to deceive. (Brief, Docket No. 38 at 5-6.[1]) The Court agrees with the Debtor that a false oath made inadvertently, under a mistaken belief, or carelessly is not grounds

---

[1] The full Brief in Support of Summary Judgment and Affidavit of the Debtor are filed under seal. The documents cited are the redacted, publicly-available versions.

for denial of discharge under § 727(a)(4). *Wan Ho Indus. Co. v. Hemken (In re Hemken)*, 513 B.R. 344, 363 (Bankr. E.D. Wis. 2014). But the Court rejects the Debtor's reading of § 727(a)(4) as requiring a higher standard of fraudulent intent than "reckless disregard for the truth." The Seventh Circuit Court of Appeals confirmed that reckless disregard for the truth is sufficient to prove fraudulent intent under § 727(a)(4). *See Stamat*, 635 F.3d at 982. The amended complaint stated, "The cumulative effect of these material misrepresentations and omissions indicate that the Defendant is recklessly indifferent to the truth." (Amended Complaint, Docket No. 18 at ¶ 143.) Therefore, if the U.S. Trustee can prove that the Debtor's conduct demonstrates that he acted with reckless disregard for the truth in his sworn statements and at his meetings of creditors, the U.S. Trustee can establish that the Debtor obtained his discharge through fraud.

The Debtor filed a Chapter 13 petition on December 9, 2014, and he converted his case to Chapter 7 on April 13, 2015. He testified at two meetings of creditors. He made minimal amendments to his schedules during the pendency of the case. After requesting and receiving documents, the Chapter 7 trustee filed a no-asset report on July 17, 2015. The Chapter 7 trustee never sought an extension of time to object to the Debtor's discharge due to any questions or issues with the Debtor's answers or documents. The U.S. Trustee points to numerous discrepancies between the Debtor's schedules, statement of financial affairs, testimony at the meeting of creditors and sworn statements the Debtor's wife made in her bankruptcy case. The Debtor does not dispute that his filings contain some mistakes, but he offers explanations for why the omissions and inconsistencies occurred. The Court rejects the U.S. Trustee's assertion that the Debtor's personal circumstances are an affirmative defense that he waived by not raising

3

Case 16-02304-svk    Doc 53    Filed 04/17/17    Page 3 of 13

them in his answer.  These circumstances go to the heart of whether the Debtor's errors were inadvertent or intentional.

For example, the U.S. Trustee points to the Debtor's Schedule I stating he received $1,500 in law firm income and $3,000 in family assistance.  (Brief, Docket No. 45 at 5.)  However, the Debtor testified at the Chapter 13 meeting of creditors that he was no longer receiving the assistance, yet failed to amend Schedule I either before or after converting the case to Chapter 7.  (Transcript, Docket No. 42-4 at 4; Brief, Docket No. 45 at 6.)  The record shows that the Debtor testified that he would amend his budget in the Chapter 13 case and provide additional information to assist the Chapter 13 trustee in the analysis of his Chapter 13 plan.  But the Debtor instead converted his case to Chapter 7, and Bankruptcy Rule 1019 only requires amended schedules on conversion if the Court so directs.  However, instead of testifying consistently at the Chapter 7 meeting of creditors, the Debtor testified under oath that he was still receiving the family assistance.  (Transcript, Docket No. 42-5 at 6.)

The Debtor provided draft 2014 tax returns to the U.S. Trustee showing $43,192 or $53,177 in annual income.  (Exhibits 8 – 9, Docket Nos. 42-8, 42-9.)  Even using the higher figure from the draft return, the total income listed on Schedule I is roughly correct.  (*See* Affidavit, Docket No. 39 at 3.)  This shows that the Debtor carelessly misstated the <u>sources</u> of his income on Schedule I, not necessarily the amount of income.  (*See id.*; Brief, Docket No. 38 at 9.)  The Debtor provided the Chapter 7 trustee with law firm bank statements showing average monthly income of approximately $4,000, demonstrating he was not trying to hide income.  (Brief, Docket No. 50 at 4 n.2; Affidavit, Docket No. 39 at 3.)  Finally, he argues that even using the higher figure, the presumption of abuse does not arise.  (Brief, Docket No. 38 at 8-9.)

4

Other than the inconsistency in his testimony at the meetings of creditors, the Court finds the Debtor's explanations about the income reasonable. The Debtor's Schedule I shows the income as of a snapshot in time – the date of his Chapter 13 petition. In order to obtain the Chapter 13 trustee's recommendation for confirmation of his plan, the Debtor agreed to prove the sources of his income, either by an affidavit or letter supporting his parents' contributions to his income or detailing his law firm income. (Transcript, Docket 42-4 at 4.) But instead of continuing his Chapter 13 case, he decided to convert his case to Chapter 7. There is no requirement for the Debtor to amend his Schedule I on conversion from Chapter 13 to Chapter 7. *See* Fed. R. Bankr. P. 1019. However, his completely opposite testimony at the Chapter 7 creditors' meeting raises a question of fact about his intent.

The Debtor takes a similar approach in explaining an undisclosed sale of a vehicle, namely, that his disclosures captured the essence of a transaction. (Affidavit, Docket No. 39 at 4.) He states that the proceeds from the sale were used to purchase office equipment, and that was disclosed. (*Id.*) Again, however, there is a discrepancy between his explanation and the record. The U.S. Trustee observes that the schedules from the Debtor's wife's first bankruptcy case, which were filed before the Debtor filed the case at issue, disclose both the vehicle and the office equipment. (Docket No. 41 at ¶ 41; Brief, Docket No. 45 at 6.)

The Debtor and the U.S. Trustee also disagree as to the required disclosure of income in the statement of financial affairs. The amended complaint alleged that the "2014 gross receipts of $219,926 reported on the [Faith Law Firm] tax return exceed the $25,000 gross income for January 2014 to December 2014 reported on statement of financial affairs question 1." (Docket No. 18 at ¶ 97.) Further, the deposits into the law firm account from June to December 2014 ($95,279.16) were greater than the $25,000. (*Id.* at ¶ 105.) The Debtor asserts that the question

5

on the statement of financial affairs asks for his gross income, not the gross income of the business. (Brief, Docket No. 38 at 10-11.) Even if the Debtor's interpretation is correct, it is not clear whether the number he listed is an accurate representation of his gross income, and the stated gross income does not appear to agree with the information from either draft 2014 tax return.

The Debtor does not dispute that several bank accounts were closed within one year of the petition date, despite the fact that he represented in his amended statement of financial affairs that he did not close any accounts. The amended complaint alleges the Debtor and his wife held two joint accounts at BMO Harris Bank from July 2013 through July 2014 and June 2013 through October 2014, respectively. (Docket No. 18 at ¶¶ 110 – 111.) It also alleges they held two joint accounts at Town Bank from at least January 2013 to July 2014. (*Id.* at ¶¶ 114 – 115.) Finally, it alleges the Debtor held an account in the name of "Michael Mack dba Credit Profit Systems" during the same period. (*Id.* at ¶ 116.) To support his motion for summary judgment, the Debtor argues that the amounts on deposit in the accounts were de minimis and he was merely careless in failing to list the accounts due to inordinate stress in his personal life, as detailed in his affidavit. (Brief, Docket No. 38 at 11-13; Affidavit, Docket No. 39.) The small amount in the accounts does not excuse the Debtor's failure to list the accounts. *See In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992) ("Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate."). As a practicing bankruptcy attorney, the Debtor is expected to understand and appreciate the questions on the required schedules and statements.

The U.S. Trustee also identified interests in limited liability companies that the Debtor failed to disclose. At a deposition taken in the adversary proceeding, the Debtor testified that he

had an interest in The Credit Man, LLC in December 2014.  (Deposition Transcript, Docket No. 29 at 4-5.)  He stated he thought his wife was the only member of Credit Profit Systems, LLC, and he did not recall whether he was a member or not.  (*Id.* at 3-4.)  The Debtor testified that he did not know why Credit Profit Systems was not disclosed on his statement of financial affairs.  (*Id.* at 4.)  He stated neither LLC was running as a business or a going concern.  (*Id.* at 3-5.)  He again argues that the failure to disclose the interest was careless or inadvertent.  (Brief, Docket No. 38 at 13.)

Finally, the U.S. Trustee alleges the Debtor made an undisclosed $22,000 transfer from himself to one of the undisclosed LLCs in March 2013.  (Amended Complaint, Docket No. 18 at ¶ 141.)  According to the Debtor's affidavit, his parents gave him a gift of $25,000 in early 2013, which he deposited into an account "for the benefit of" Credit Profit Systems.  (Docket No. 39 at 4.)  He then transferred the money to a Credit Profit Systems account because he was concerned about the bank setting off the account.  (*Id.*)  The Debtor's brief explains that he believed he was making an intracompany transfer from one account incorrectly set up as a d/b/a account for the LLC to an account correctly set up for the LLC.  (Docket No. 38 at 14.)  His testimony at the Chapter 7 meeting of creditors about this transaction appears inconsistent.  When asked if he had received any money or property other than wages or Social Security in the past four years, he stated that his parents gave him approximately $11,000.  When asked if it was a loan or a gift, he stated it was "supposed to be a loan, at this point" and said he was going to list them as a creditor.  (Transcript, Docket No. 42-5 at 3.)  He stated he had not received any other money in the past four years not listed in the case.  (*Id.*)

If the Debtor can provide an explanation for the discrepancies between his testimony at the meeting of creditors and affidavit, the lack of disclosure of the inter-account transfer may be

7

excusable. The Court addressed a similar situation in *Wan Ho Indus. Co.*, 513 B.R. at 362-64. In that case, the Court determined – after trial – that a debtor who failed to disclose certain transfers and deposits had not done so with fraudulent intent. The loans were for the purpose of covering an overdraft in the debtor's business's account. First, there was no requirement for him to disclose a deposit to and repayment from an LLC account in his personal bankruptcy. Although some funds from another transaction funneled through the debtor's personal account, he simply held money from his brother in the account until another party was able to fund a loan. He then refunded his brother's money and transferred the other funds to the LLC account. Because the money "went in and out" of the account, the debtor did not consider that he was making the repayment with personal funds. *Id.* at 363. After making the credibility determinations that a trial affords, the Court concluded that the debtor did not act with the requisite intent to satisfy the standards to deny his discharge.

In this case, relying on an affidavit and deposition testimony, the Debtor's ultimate position is that his counsel made mistakes when preparing the petition, schedules, and other documents and he "simply was not in the right state of mind to catch and correct the mistakes because he was experiencing debilitating personal struggles at the time." [2] (Brief, Docket No. 38 at 1-2.) Further, the U.S. Trustee "inaccurately portrayed" the Debtor's conduct. (*Id.* at 4.) The Debtor attempts to untangle the U.S. Trustee's allegations and argues that each individual omission or inconsistency was merely careless and thus there is no fact issue as to his intent. However, the U.S. Trustee points to the Debtor's course of conduct as a whole, including the Debtor's multiple omissions and his sophistication as an experienced bankruptcy lawyer, in

---

[2] This argument conflicts with evidence presented by the U.S. Trustee, as the Debtor testified at both meetings of creditors that he prepared the petition and schedules himself, and Attorney Jeffrey Reitz had come into the case for the purpose of the second meeting. (Transcripts, Docket Nos. 42-4 at 2, 42-5 at 3.)

8

showing that there are disputed factual issues about the Debtor's intent.  Essentially, the Debtor would like the Court to draw inferences in his favor from his personal circumstances as described in his affidavit, something the Court cannot do on his motion for summary judgment.

The Debtor also repeatedly returns to arguments that any omissions or inconsistencies did not affect his creditors or the bankruptcy case.  He argues that the presumption of abuse would not have arisen even had he stated his income as reflected in draft tax returns, and the U.S. Trustee does not claim any creditors were harmed.  (Brief, Docket No. 38 at 8-9.)  The undisclosed bank accounts did not hold significant assets to pay creditors, and the activity in the accounts does not show fraudulent or preferential transfers.  (*Id.* at 11-13.)  Similarly, the undisclosed LLCs did not have assets or separate value associated with them.  (*Id.* at 13, 15.)  Finally, the transfer of funds to one of the LLCs was not really a transfer at all because the Debtor reasonably believed he was making an intracompany transfer, and the timing of the transfer was such that the Trustee would not have been able to recover it as a fraudulent transfer.[3]  (*Id.* at 14.)  However, given that a showing of reckless disregard for the truth is sufficient to prove fraudulent intent under § 727(a)(4), *see Stamat*, 635 F.3d at 982, such explanations, assuming the Court credited them, would not be the end of the inquiry.  It is not necessary to find a detriment to creditors or benefit to the debtor to find that a debtor made fraudulent statements under § 727(a)(4)(A).  *Lardas v. Grcic*, 847 F.3d 561, 570 (7th Cir. 2017).

The Debtor's defense that the bank accounts contained de minimis amounts and the LLC interests had no value goes to the materiality of the omissions.  Courts judge whether a fact is material on the basis of whether it "bears a relationship to the debtor's business transactions or

---

[3] The Debtor states the first element of § 548 as requiring the transfer to have been made within one year of the petition date. (Brief, Docket No. 38 at 14.) However, § 548 now provides for a two-year window. Nevertheless, moving gifted money from one bank account to another likely does not constitute a fraudulent transfer in any event.

9

Case 16-02304-svk    Doc 53    Filed 04/17/17    Page 9 of 13

estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Stamat*, 635 F.3d at 982 (quoting *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010)). Because the bankruptcy system relies on truthful and complete disclosures by debtors, "the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Id.* (quoting *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)); *see Lardas*, 847 F.3d at 570 ("[M]ateriality in the bankruptcy context has a broad meaning."). "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *Yonikus*, 974 F.2d at 904. Because he focused on the value (or lack thereof) of the omitted assets and transfers, the record is not clear that the Debtor's omissions related to business transactions or dispositions of property. Therefore, there is an issue of fact as to the extent to which the Debtor's statements and omissions related materially to the bankruptcy case.

In light of the U.S. Trustee's cumulative evidence, and drawing inferences in the U.S. Trustee's favor, the Court concludes that factual issues exist for trial as to the Debtor's knowledge and intent and the materiality of the omissions. *See Skavysh v. Katsman (In re Katsman)*, 771 F.3d 1048, 1050 (7th Cir. 2014) (observing debtor's "many false statements bespeak a pattern of reckless indifference to the truth, implying fraudulent intent" and the bankruptcy judge "missed the pattern"); *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009) ("[T]he cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent."). Importantly, the credibility of the Debtor's explanations as to his intent should be evaluated by the factfinder, not through affidavits on summary judgment. *See Liberty Lobby, Inc.*, 477 U.S. at 255 (credibility determinations, weighing of evidence, and determining what inferences to draw

10

from the facts are functions of the factfinder); *Zafar Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008). Accordingly, the Court should determine at trial whether (1) the Debtor was simply careless or whether he knew his statements were false and his conduct rose to the level of reckless disregard for the truth; and (2) the Debtor's statements and omissions were material and thus sufficient for denial of discharge under § 727(a)(4).

## The U.S. Trustee's Cross-Motion for Partial Summary Judgment

To succeed under § 727(d)(1), a plaintiff must prove not only that the debtor obtained a discharge by fraud but that the plaintiff did not know about the fraud in time to object to the Debtor's discharge. The U.S. Trustee asserts there is no issue of fact as to whether he had such knowledge in this case. The U.S. Trustee claims he did not become aware of the Debtor's fraud until after the Debtor's spouse filed a bankruptcy petition, which was after the Debtor received his discharge.[4] (Docket No. 41 at ¶¶ 20-32; Brief, Docket No. 45 at 13.)

The majority of courts that have addressed the "did not know" requirement of § 727(d)(1) take a broad approach and hold that dismissal of a discharge revocation action is proper where, before discharge, the plaintiff knows such facts that he or she is put on notice of a possible fraud. *Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 887-88 (8th Cir. 1991); *see also Rice v. Sasse (In re Sasse)*, 438 B.R. 631, 640 (Bankr. W.D. Wis. 2010) (the burden is on the objecting party to investigate diligently before discharge when the party knows sufficient facts to constitute notice of possible fraud). In this case, the Chapter 7 trustee clearly had enough information to question the veracity of the Debtor's schedules and statements. (*See* Proposed

---

[4] The Debtor's spouse actually filed two petitions. She filed a Chapter 13 case on April 8, 2014 that was dismissed on August 1, 2014, and she filed a Chapter 13 case on October 20, 2015 that was converted to Chapter 7 on May 12, 2016. The Debtor did not join in these petitions, but the same attorney from the Debtor's firm that assisted the Debtor initially represented her and assisted in the preparation of her schedules in the 2015 case.

11

Facts, Docket No. 41 at ¶¶ 28-32; Affidavit, Docket No. 44.) However, the Chapter 7 trustee did not share this information with the U.S. Trustee. The U.S. Trustee did not attend the meeting of creditors, and the U.S. Trustee did not receive the Debtor's tax returns before the Debtor received his discharge. (*See* Affidavit, Docket No. 42 at ¶ 10; Exhibits 4 – 5, Docket Nos. 42-4, 42-5.) The knowledge of the Chapter 7 trustee is not imputed to the U.S. Trustee. *McDermott v. Larson (In re Larson)*, 553 B.R. 646, 654 (Bankr. W.D. Mich. 2016).

Admittedly, the Office of the U.S. Trustee received email notifications of filings in the Debtor's case and the Debtor's wife's first case filed April 8, 2014.[5] (*See, e.g.*, Case No. 14-34586-svk, Docket No. 7; Case No. 14-23902-pp, Docket No. 5, showing the Office of the U.S. Trustee as a party receiving notice through the Court's electronic system.) But absent attendance at the meetings of creditors, the filings alone (at least until the wife's second case was filed) did not suggest possible fraud. It was only after the Debtor's wife's second case was filed that many of the discrepancies became apparent. Since that filing did not occur until after the Debtor's discharge, the U.S. Trustee has shown that he did not know of the Debtor's alleged fraud until it was too late to object to the Debtor's discharge. Therefore, the U.S. Trustee's cross-motion for partial summary judgment is granted.

## Conclusion

Disputed factual issues remain about the Debtor's intent and the materiality of the Debtor's omissions, and the Debtor's motion for summary judgment must be denied. The Debtor has not pointed to anything in the record that contradicts the U.S. Trustee's claim that he did not know about the Debtor's alleged fraud until after the Debtor's discharge, and the U.S.

---

[5] The Debtor did not cite, and the Court's independent research did not locate, any case in which the U.S. Trustee was deemed to have sufficient knowledge of a debtor's alleged fraud simply by virtue of the U.S. Trustee's party-in-interest status and receipt of electronic notices in a case.

Trustee's partial summary judgment motion is granted. The Court will contact counsel for the parties to schedule the trial in this matter. The trial will be limited to the issue of whether the Debtor obtained his discharge through fraud.

Dated: April 17, 2017

By the Court:

/s/ Susan Kelley
Susan V. Kelley
Chief U.S. Bankruptcy Judge